IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:10CR170–HEH |
| | ) | |
| JACK ROSGA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
(Motions *in Limine*)

This case is presently before the Court on motions *in limine* filed by both

Defendant Jack Rosga and the United States.  In his Motion for Disclosure of

*Brady/Giglio* Information and for Production of *Jencks* Material[1], Defendant Rosga seeks

information which may discredit or impeach the testimony of two government agents and

asks for a detailed disclosure of the cost of the investigation.   The government's Motion

*in Limine* asks the Court to exclude certain evidence that may be offered by the

Defendant during trial.  The Court heard oral argument on both motions on November 29,

2010.

The Court will turn first to the Defendant's Motion for Disclosure of *Brady/Giglio*

Information and for Production of *Jencks* Material.  Initially, the Defendant requests that

the government be required to produce records and information concerning the arrest of

Special Agent Daniel Ozbolt of the Bureau of Alcohol, Tobacco, Firearms, and

Explosives in his undercover capacity, for driving while intoxicated on June 22, 2009.

---

[1] Defendant Mark Jason Fiel filed a motion to adopt and join Defendant Rosga's Motion for
Disclosure of *Brady/Jencks* Material.  That motion will be granted.

The Defendant also seeks information concerning a traffic citation received by S.A. Ozbolt while working undercover on April 28, 2009 for reckless driving (speeding—67 in a 45 mph zone). Both charges were eventually *nolle prossed.*

The Court has now learned that S.A. Ozbolt failed to advise his supervisor of this citation as required. This could arguably affect his credibility and should be disclosed.

With respect to the June 22, 2009 incident, S.A. Ozbolt also received a letter of reprimand from the special agent in charge of the Washington field division of ATF for failing to notify his supervisor that he was operating undercover in the Richmond area the week of June 22, 2009. This failure to notify was apparently in violation of ATF regulations. Before ruling on the Defendant's motions with respect to S.A. Ozbolt, the Court instructed the government to produce all relevant documents for *in camera* inspection. *See United States v. Trevino*, 89 F.3d 187, 190 (4th Cir. 1996) (requiring court to review materials *in camera* where defense has made a plausible showing that the evidence would be material and favorable). The Court has now completed that review process[2] and concluded that aside from the failure to disclose the speeding citation, none of the information is exculpatory, relevant, or admissible in this case. Nothing in the documents revealed information inconsistent with S.A. Ozbolt's testimony at the prior trial and hence has no impeachment value. The reprimand simply revealed a failure on S.A. Ozbolt's part to follow an ATF regulation. As to S.A. Ozbolt, the Defendant's request for production will be granted in part and denied in part.

---

[2] All documents reviewed have been sealed and placed in the Court's file.

Next, the Defendant seeks information concerning an alleged false representation by Special Agent Jeffrey Grabman of the Bureau of Alcohol, Tobacco, Firearms, and Explosives to his supervisor nineteen years ago. At the time of the incident, S.A. Grabman was apparently a trainee agent and had witnessed his training officer make a false statement to a state trooper. The false statement pertained to the nature of their mission that day. Later, when interviewed by his direct supervisor, S.A. Grabman stated something to the effect that whatever his training officer said was correct. Subsequently, when interviewed by internal affairs investigators, S.A. Grabman corrected his misrepresentations and accurately recounted the events. S.A. Grabman apparently received a letter of reprimand.

Following oral argument on the Defendant's motion for disclosure of all documents and records pertaining to S.A. Grabman's false representation, and any follow up investigation, this Court directed the government to produce any relevant documents for *in camera* inspection. The United States has represented to the Court that all such records have been purged in accordance with ATF's standard procedures and are no longer available.

Finally, the Defendant asked the Court to require the government to produce records pertaining to the cost of the investigation. This request will be denied. The underlying investigation in this case required approximately two years and spanned several states. Allowing evidence of the cost of the investigation and the government's item-by-item response would create a significant diversion of the jury's attention in a trial projected to last approximately two weeks. In fairness, the government would be allowed

3

to introduce extensive evidence explaining the various expenditures, and perhaps to justify the cost, even the fact that fifteen people have already pled guilty. In the Court's view, the diversionary effect of such extraneous evidence more than outweighs its probative value.

Focusing next on the Motion *in Limine* by the United States concerning certain evidentiary issues, the government moves to exclude an audio tape of a comment by a co-conspirator and evidence of the cost of the investigation. For the reasons stated above, detailed evidence of the cost of the investigation will not be permitted. However, this will not preclude the defense from arguing in general the budgetary effect of a two-year undercover operation on investigative decisions.

With respect to the audio tape, the United States asks the Court to bar the defense from playing an audio recording of comments made by co-conspirator Joseph Allman on October 9, 2009 in which Allman takes credit for being involved in ordering an assault on a member of the Hells Angels Motorcycle Club. The government argues that the tape is inadmissible under Federal Rule of Evidence 801(d)(2)(E) because that exception to the hearsay rule allows a co-conspirator's declaration to be admitted only *against* a party to the conspiracy, not in their favor. *See United States v. Abbas*, 74 F.3d 506, 511 (4th Cir. 1996).

The Defendant, however, contends that the Allman tape constitutes a statement against interest admissible under FRE 804(b)(3). Under this rule, hearsay may be admitted if 1) the declarant is unavailable; 2) the statement is generally adverse to the declarant's penal interests; and 3) corroborating circumstances indicate the

4

trustworthiness of the statement.  The party offering the statement bears the formidable

burden of meeting the requirements of FRE 804(b)(3).  *See United States v. Bumpass*, 60

F.3d 1099, 1102 (4th Cir. 1995).  The Defendant in this case cannot demonstrate that the

declarant, Joseph Allman, is unavailable or that corroborating circumstances indicate the

trustworthiness of Allman's statement.  There is no evidence of independent

corroboration or that Allman repeated the statement on multiple occasions.  Moreover, as

the evidence at the first trial disclosed, taking credit for acts of violence against members

of the Hells Angels is considered prestigious and praiseworthy within the Outlaws

organization.

The government's Motion to Exclude the Allman tape will be granted.  The

Defendant is unable to demonstrate at this point that Allman is unavailable, that the

statement was generally adverse to his penal interest, or that it was trustworthy.

However, if an appropriate foundation for the admission of the tape is established during

trial, the Court will revisit the admissibility of the tape.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Judge

Date: Nov 30 2010
Richmond, VA

5