IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 3:10-cr-170-001 |
| v. | ) | |
| | ) | The Honorable Henry E. Hudson |
| JACK ROSGA, | ) | |
| a/k/a "Milwaukee Jack" | ) | |
| Defendant | ) | Sentencing Date: April 8, 2011 |
| | ) | (9:30 a.m.) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S POSITION ON SENTENCING**

The United States respectfully responds to several issues raised by the defendant:

**1. The Attempted Murder Guideline Under U.S.S.G. § 2A2.1(a)(1).**

The defendant's statement that Michael Pedini's testimony "remains uncorroborated by any other witness testimony or direct evidence" is plainly wrong. Further, the defendant's effort urging the Court to adopt the jury's decision on the murder racketeering act is based purely on speculation as to the jury's reasoning. This effort at speculation is wrong as a matter of law. *See U.S. v. Watts*, 519 U.S. 148, 155 ("... the jury cannot be said to have "necessarily rejected" any facts when it returns a general verdict of not guilty." Id.). *U.S. v. Isom*, 886 F.2d 736, 738 (4th Cir 1989)("A verdict of acquittal demonstrates only a lack of proof beyond a reasonable doubt; it does not establish the defendant's innocence. .... The jury needed only a reasonable doubt to acquit or *quite plausibly it may have returned its favorable verdict because of lenity.*" Id.)(Emphasis added.) The defendant argues that the Court is relieved of its ability to make an independent evaluation of the facts and evidence in this matter and find by a preponderance

standard that the murder cross reference should apply. As the foregoing cases, among others, plainly demonstrate, the Court possesses the authority to make independent factual findings at sentencing. We urge the court to apply the murder guidelines.

Nonetheless, the defendant's assertion that Michael Pedini's testimony was uncorroborated requires correction. The following chronology of evidence elicited at trial in this matter corroborates Michael Pedini:

1. On July 5, 2009, three months prior to the shooting of the Hells Angel member, Jack Rosga told the undercover agents over lunch that he expected to go to jail for his actions as the national president of the Outlaws. He further stated that he could accept going to jail for ordering a hostile action against a rival motorcycle club.

2. Later on July 5, 2009, at the Petersburg Outlaws clubhouse maintained by the undercover agents, in a discussion about the rivalry with the Hells Angels, the defendant stated he did not agree with back and forth posturing with the Hells Angels. He further stated that the way to deal with the Hells Angels was to shoot them. He emphasized the point by demonstrating a gun with his hand. The defendant then cautioned that they should not be having the conversation around cell phones and he walked away from the conversation towards the bathroom.

3. It is not disputed that Jack Rosga and Michael Pedini were together at the Arkansas national Outlaws event on or about September 27, 2009. It is also not in dispute that Michael Pedini made a 4000 mile round trip motorcycle ride between Maine and Arkansas for ultimately a short stay in Arkansas. This meeting was approximately 2 weeks after two Outlaws members were beaten in Waterbury, Connecticut.

4. Outlaws member Werth called SA Grabman on or about September 29, 2009, to inform him that he needed to meet with him regarding information he learned at a "big table" meeting in Arkansas.

5. On or about October 3, 2009, (one week after the Arkansas meeting) SA Grabman attended a regional meeting called by Werth, who stated that the Outlaws are officially "at war" with the Hells Angels and he emphasized the point with a "no ifs, ands or buts about it" statement.

6. On or about October 5, 2009, UC Grabman spoke with Maine Outlaws member Benvie who stated that "Jack is all over Madman about this."

7. On or about October 8, 2009, Michael Pedini and Thomas Mayne shot Hells Angels member Gary Watson.

8. On or about April 17, 2010, in Minnieska, Minnesota, members of the Outlaws Wisconsin chapter violently assaulted a member of the Hells Angels and took his patches. Dozens of Outlaws members were stopped soon after the event, including the defendant's son.

9. In or about April, 2010, the defendant attended an Outlaws funeral in Tennessee. During that event, the defendant made statements that the Outlaws have Wisconsin controlled and that they don't let anybody in.

10. On or about June 15, 2010, the defendant possessed in his bedroom a large graphic poster depicting a bloody fight between the Outlaws and the Hells Angels. Beneath the poster, in a brown ceremonial box, the defendant possessed several Hells Angels patches.

The defendant would lead the Court to believe that all of this evidence, and all of the other circumstances of the case, are completely divorced from Michael Pedini's actions. The

contrary is true. The foregoing facts and circumstances, including Michael Pedini's testimony that Jack Rosga ordered him to commit an act of violence, are perfectly consistent and provides abundant proof as to what happened inside this organization in September and October 2009. Michael Pedini is unquestionably an unsavory, mean and violent person. However, two simple truths are clear: (1) this unsavory, mean and violent person is an underling in this defendant's unsavory, mean and violent organization; and, (2) Pedini's unsavory, mean and violent nature does not nullify his ability to credibly testify as to who told him to shoot a rival gang member. The evidence supports a conclusion that Jack Rosga told Michael Pedini to exact revenge on a rival gang member.

Notwithstanding the visual depictions of rival gang violence in the defendant's bedroom, the defendant's own statements advocating violence against the Hells Angels, and the abundant circumstantial evidence from September and October 2009 demonstrating that Jack Rosga ordered violence towards a rival gang member, the defendant maintains that Michael Pedini fabricated a story to either promote himself, or save himself. The defendant urges the Court to believe that this unsavory, mean and violent person is nonetheless sophisticated enough to forecast his future in September 2009 and decide that telling everyone that Jack Rosga ordered him to commit a killing is (1) in his best interest as an Outlaws member, and (2) potentially beneficial to him as a possible defendant at some unknown time in the future should he ever get caught. That characterization of Michael Pedini's ability bears little resemblance to reality.

Instead, what is far more reasonable, rational, sensible, and true, is that a violent man (Michael Pedini) acting within a violent organization (the Outlaws) took an order from the national president of the organization (Jack Rosga) and followed through on that order because

that is what subordinate members do in violent organizations.

The government addresses two additional points raised in the defendant's pleading concerning the application of the murder guideline:

1.     The defendant makes a blanket statement on page five of his sentencing position that the Court's jury instruction 29 "encompasses" the reasonably foreseeable standard of U.S.S.G. § 1B1.3(a)(1)(B).  The defendant offers no legal support for this assertion, nor even an anecdote to support the assertion.  The assertion is legally, factually and textually incorrect.  The defendant selects one sentence from a five paragraph jury instruction and urges the court to accept that the jury was instructed on reasonably foreseeable acts in jointly undertaken criminal activity.  The Court's instruction 29 does not say this.  The language of 1B1.3(a)(1)(B) does not appear in the Court's instruction 29 to the jury, including the important "reasonably foreseeable" language.

U.S.S.G. § 1B1.3 "describes in sweeping language the conduct that a sentencing court may consider in determining the applicable guideline range." *United States v. Watts*, 519 U.S. 148, 152 (1997).  Given this direction from the Supreme Court, and in consideration of the defendant's role within the organization, and the facts of this case, it is simply beyond dispute that the defendant could reasonably foresee that a rival gang member would be shot during the defendant's participation in this conspiracy.

2.     The defendant's reliance on *United States v. Montgomery* and *McMillan* are unpersuasive. First, the sentencing enhancement in this case does not drive (or "wag") any substantive offense.  The attempted murder of the Hells Angel was an act within the racketeering conspiracy.  Second, the government in no way suggests that the sentence imposed should exceed

the statutory maximum sentence (23 years). Third, the reference to the attempted murder guidelines does not "greatly multipl[y] the recommended guidelines sentence as to transform it altogether" as stated on page 5 of the defendant's sentencing position. In fact, we acknowledge that the statutory maximum allowable sentence is below the guidelines range with the murder cross reference. In his argument, the defendant is asking the Court to assume that his arbitrary selection of offense level 28 is presumptively correct. The defendant then creates an argument that the government is asking the Court to multiply the guidelines by an unwarranted enhancement. This is not the case. Further, the government does not seek "to punish the defendant for crimes of which he was not convicted." *U.S. v. Watts*, 519 U.S. 148, 154 (1997). Instead, we ask the Court to properly calculate the guidelines, *Gall v. United States*, 552 U.S. 38, 51-53 (2007), "because of the manner in which he committed the crime of conviction." *U.S. v. Watts,* 519 at 154.

2.   **The 3553(a) factors**

The defendant argues that a sentence of 276 months would create an unwarranted disparity with the sentences of defendants who were convicted upon their guilty pleas and the conviction of Les Werth. The government addressed the issue of disparities of sentences with defendants who pled guilty in its initial sentencing position. The government submits that this argument is not available to the defendant. See *United States v. Labonte*, 520 U.S. 751, 761-762 (1997)(sentencing disparities arising from the exercise of prosecutorial discretion does not create "unwarranted" disparities). *See Also, United States v. Mendoza-Ramirez*, 326 Fed. Appx. 705 (4th Cir. 2009); *United States v. Browning*, 109 Fed. Appx. 542 (4th Cir 2004); *United States v. Moody*, 30 Fed Appx 58 (4th Cir. 2002).

The comparison with Les Werth also should not persuade the Court. Jack Rosga's role as the national leader of this organization was qualitatively more important than that of Les Werth. As the national leader, the defendant assumed responsibility for the organization across multiple regions of the country. Further, the defendant was found to have participated in multiple acts of extortion which were not found by the jury who determined Les Werth's fate. The extortion crimes encompass acts involving murder or attempted murder. *See U.S.S.G. § 2B3.2(c)(2)*. Further, 18 U.S.C. §3553(a)(6)("unwarranted disparity") is only one of many factors for the court to consider. One factor alone does not guide the Court's decision. For these reasons and others, no unwarranted disparity in sentencing is created by imposing a 276 month sentence on this defendant.

For the foregoing reasons and for those reasons stated in open court, the government submits that a sentence of 276 months is a reasonable and appropriate sentence for this defendant's criminal conduct.

        Respectfully Submitted,

        NEIL H. MACBRIDE
        United States Attorney

By:     /s/
    Dennis M. Fitzpatrick
    Assistant United States Attorney
    Office of the United States Attorney
    2100 Jamieson Avenue
    Alexandria, Virginia 22314
    Tel: (703) 299-3700
    Fax: (703) 299 3981
    Email: dennis.fitzpatrick@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 6th day of April, 2011, I electronically filed the foregoing Government's Response to Defendant's Position on Sentencing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Claire Cardwell, Esq.
Attorney for Jack Rosga

By:       /s/
Dennis M. Fitzpatrick
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
Fax: (703) 299 3981
Email: dennis.fitzpatrick@usdoj.gov