1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF VIRGINIA
2             Richmond Division

3  UNITED STATES OF AMERICA        }
                                   }
4  v.                              }    Criminal Case No.:
                                   }    3:10 CR 170
5  JACK ROSGA, ET AL               }

6                                       December 14, 2010

7


8    **COMPLETE TRANSCRIPT OF JURY INSTRUCTIONS AT TRIAL**
          **BEFORE THE HONORABLE HENRY E. HUDSON**
9          **UNITED STATES DISTRICT COURT JUDGE**

10 APPEARANCES:

11 Dennis Fitzpatrick, Esquire
   Peter S. Duffey, Esquire
12 Theryn G. Gibbons, Esquire
   OFFICE OF THE UNITED STATES ATTORNEY
13      Counsel on behalf of the United States

14 Claire G. Cardwell, Esquire
   Craig A. Mastantuono, Esquire
15      Counsel on behalf of Jack Rosga

16 Angela D. Whitley, Esquire
        Counsel on behalf of Mark Jason Fiel
17
   Charles D. Lewis, Esquire
18      Counsel on behalf of Harry R. McCall

19 Ali J. Amirshahi, Esquire
        Counsel on behalf of Christopher Timbers
20
   John F. McGarvey, Esquire
21      Counsel on behalf of Dennis Haldermann

22

23

24           KRISTA M. LISCIO, RMR
           OFFICIAL COURT REPORTER
25       UNITED STATES DISTRICT COURT

1      THE COURT:  All right.  I will at this point go

2 ahead and bring the jury in and instruct, and then

3 we'll proceed with the closing arguments.  How much

4 time do you want to argue the case?

5      MR. DUFFEY:  Judge, I think I need about an hour.

6 Maybe just a little bit more.

7      THE COURT:  An hour?

8      MR. DUFFEY:  Yes, sir.

9      THE COURT:  Okay.

10      Ms. Cardwell?

11      MS. CARDWELL:  Probably 45 minutes.

12      THE COURT:  Ms. Whitley?

13      MS. WHITLEY:  Probably 45 minutes to an hour,

14 Judge.

15      And, Judge, also I would ask that we at least

16 publish the last exhibit that the jury had not seen,

17 36-C JF, I believe it was.

18      THE COURT:  They will have it with them.  Why

19 don't you -- you may, if you want to, draw their

20 attention to it during your final argument, okay?

21      MS. WHITLEY:  That's okay.

22      THE COURT:  I think that's better than just kind

23 of randomly handing it to them to circulate.

24      MS. WHITLEY:  I would ask if Madam Clerk has that?

25      THE COURT:  She'll have it ready for you.

```
1         Mr. Lewis, how much time do you need, sir?
2         MR. LEWIS:  Fifteen minutes to 20 minutes, Judge.
3         THE COURT:  Mr. Amirshahi?
4         MR. AMIRSHAHI:  About 20 to 25 minutes.
5         THE COURT:  Mr. McGarvey?
6         MR. McGARVEY:  About 30 minutes, Your Honor.
7         THE COURT:  All right.  I don't know that we'll
8  get all of them in today.  We'll do the best that we
9  can.
10        Ready for the jury?
11        MR. McGARVEY:  Yes, sir.
12        THE COURT:  Marshal, bring the jury in.
13           (The jury is present in the courtroom.)
14        THE COURT:  Ladies and gentlemen, we're
15 approaching the final stage of the trial.  I'm sure you
16 are glad to hear that.
17        Ladies and gentlemen, my next task is to read to
18 you the jury instructions that will govern your
19 deliberations.  You may recall that I explained to you
20 that the jury instructions are kind of the legal
21 yardstick you're going to use to measure the evidence
22 that you've heard.  You will be able to take the jury
23 instructions with you back to the jury room and consult
24 them as necessary during the course of your
25 deliberations, but give me your careful attention as I
```

1  read them to you.

2      As a matter of fact, as I will tell you in more

3  detail later, I recommend and suggest to you, although

4  you can deliberate as you wish, that you begin your

5  jury deliberations by going over the instructions so

6  you'll know exactly what must be proven and how it must

7  be proven by the various arguments.

8      Ladies and gentlemen, also you will note that the

9  instructions, some of them are numbered and some of

10 them are lettered.  The numbering and lettering have no

11 significance whatsoever.  It is merely for -- to allow

12 counsel and the Court to refer to specific documents as

13 we discuss them on the record in connection with the

14 case.

15     Now, remember as you read over the jury

16 instructions that many of the instructions refer to

17 other instructions, so you need to consider all the

18 instructions as a whole.  They collectively teach you

19 what the law is that you will use to decide this case.

20     Although the defendants have been indicted, you

21 must remember that an indictment is only an accusation.

22 It is not evidence.  The defendants have pled not

23 guilty to the indictment.  As a result of the

24 defendants' pleas of not guilty, the burden is on the

25 prosecution to prove their guilt beyond a reasonable

1  doubt.  This burden never shifts to the defendants for
2  the simple reason that the law never imposes upon a
3  defendant in a criminal case the burden or duty of
4  calling any witness or producing any evidence.
5       The law presumes the defendants to be innocent of
6  all charges against them.  I therefore instruct you,
7  that you, as a jury, must presume the defendants to be
8  innocent throughout your deliberations until such time,
9  if ever, as you are satisfied that the government has
10 proven their guilt beyond a reasonable doubt.  The
11 defendants began the trial here with a clean slate.
12 This presumption of innocence remains with the
13 defendants and will continue with them into your
14 deliberations.  This presumption, alone, is sufficient
15 to acquit them unless and until you as jurors, after
16 careful and impartial consideration of all the evidence
17 in this case, are unanimously convinced of their guilt
18 beyond a reasonable doubt.  If the government fails to
19 sustains its burden, you must find the defendants not
20 guilty.
21      While the government's burden of proof is a strict
22 or a heavy one, it is not necessary that the
23 government's -- excuse me.
24      While the government's burden of proof is a strict
25 or heavy burden, it is not necessary that the

defendants' guilt be proven beyond all possible doubt.

Rather, the government's proof must exclude any

*"reasonable doubt"* concerning the defendants' guilt.

If you find that the government has met this burden,

then you must convict the defendants.

The evidence in this case consists of the sworn testimony of the witnesses – regardless of who may have called them, and all exhibits received in evidence – regardless of who may have produced them.

You are to base your verdict only on the evidence received in the case.  In your consideration of the evidence received, however, you are not limited to the bald statements of the witnesses or to the bald assertions in the exhibits.  In other words, you are not limited solely to what you see and hear as the witnesses testify or as the exhibits are admitted.  You are permitted to draw from the facts which you find have been proved such reasonable inferences as you feel are justified in light of your experience and common sense.

There are two types of evidence generally presented during trial – direct evidence and circumstantial evidence.  Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact such as an eyewitness.

Circumstantial evidence is proof of a chain of facts or circumstances indicating the existence of a fact. The law makes no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence.

You should weigh all the evidence in the case. In doing so, you may draw inferences from the evidence. Inferences are simply deductions or conclusions which reason and common sense lead one to draw from the evidence received in the case.

It is your duty to give separate and personal consideration to the case of each defendant. When you do so, you should analyze what the evidence in the case shows with respect to that defendant, leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants. Each defendant is entitled to have his case determined from evidence as to his own acts, statements, and conduct and any other evidence in the case which may be applicable to him. The fact that you return a verdict of guilty or not guilty to one defendant should not, in any way, affect your verdict regarding any other defendant.

Likewise, a separate crime is charged against one

or more of the defendants in each count of the indictment.  Each alleged offense, and any evidence pertaining to it, should be considered separately by the jury.  The fact that you find one defendant guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense charged against that defendant or against any other defendant. You must give separate and individual consideration to each charge against each defendant.

The defendants in this case did not testify.  A defendant in a criminal case has an absolute right under our Constitution not to testify.  The fact that the defendants did not testify must not be discussed or considered in any way when deliberating and arriving at your verdict.  No inference of any kind may be drawn from the fact that a defendant decided to exercise his privilege under the Constitution and did not testify.

In short, the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.  The burden of proving a defendant guilty beyond a reasonable doubt remains with the prosecution throughout the entire trial and never shifts to a defendant.

You, as jurors, are the sole and exclusive judges of the credibility of each of the witnesses called to

testify in this case, and only you determine the

importance or the weight that their testimony deserves.

After making your assessment concerning the credibility

of a witness, you may decide to believe all of that

witness's testimony, only a portion of it, or none of

it.

In making your assessment of that witness, you

should carefully scrutinize all of the testimony given

by that witness, the circumstances under which each

witness has testified, and all the other evidence which

tends to show whether a witness, in your opinion, is

worthy of behalf.  Consider each witness's

intelligence, motive to falsify, state of mind, and

appearance and manner while on the witness stand.

Consider the witness's ability to observe the matters

as to which he or she has testified and consider

whether he or she impresses you as having an accurate

memory or recollection of these matters.  Consider also

any relation a witness may bear to either side of the

case, the manner in which each witness might be

affected by your verdict, and the extent to which, if

at all, each witness is either supported or

contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony

of a witness or between the testimony of different

1 witnesses may or may not cause you to disbelieve or

2 discredit such testimony.  Two or more persons

3 witnessing an incident or transaction may simply see or

4 hear it differently.  Innocent misrecollection, like

5 failure of recollection, is not an uncommon human

6 experience.  In weighing the effect of a discrepancy,

7 however, always consider whether it pertains to a

8 matter of importance or an insignificant detail, and

9 consider whether the discrepancy results from innocent

10 error or from intentional falsehood.

11 After making your own judgment or assessment

12 concerning the believability of a witness, you can then

13 attach such importance or weight to that testimony, if

14 any, that you feel it deserves.  You will then be in a

15 position to decide whether the government has proven

16 the charges beyond a reasonable doubt.

17 The testimony of a witness may be discredited or,

18 as we sometimes say, impeached by showing that he or

19 she previously made statements which are different than

20 or inconsistent with his or her testimony here in

21 court.  The earlier inconsistent or contradictory

22 statements are only admissible to discredit or impeach

23 the credibility of the witness and not to establish the

24 truth of these earlier statements made somewhere other

25 than here during this trial.  It is the province of the

1  jury to determine the credibility of a witness who has

2  made prior inconsistent or contradictory statements.

3      The testimony of an alleged accomplice, someone

4  who said he participated in the commission of a crime,

5  must be examined and weighed by the jury with greater

6  care than the testimony of a witness who did not

7  participate in the commission of that crime.

8      The fact that an alleged accomplice has entered or

9  has agreed to enter a plea of guilty to the offense

10 charged is not evidence of the guilt of any other

11 person, including the accused.

12     The jury must determine if the testimony of the

13 accomplice has been affected by self-interest, or by an

14 agreement he may have with the government, or by his

15 own interest in the outcome of this case, or by

16 prejudice against the accused.

17     The testimony of an informant, someone who

18 provides evidence against someone else for money, or to

19 escape punishment for his own misdeeds or crimes, or

20 for other personal reason or advantage, must be weighed

21 and examined by the jury with greater care than the

22 testimony of a witness who is not so motivated.

23     The jury must determine whether the informer's

24 testimony has been affected by self-interest, or by the

25 government -- excuse me, or by the agreement he has

1  with the government, or his own interest in the outcome

2  of the case, or by prejudice against the accused.

3      The testimony of a drug or alcohol abuser must be

4  examined and weighed by the jury with greater care than

5  the testimony of a witness who does not abuse drugs or

6  alcohol.

7      The jury must determine whether the testimony of

8  the drug or alcohol abuser has been affected by drug or

9  alcohol use or the need for drugs or alcohol.

10      The rules of evidence ordinarily do not permit

11  witnesses to testify as to their own opinions or their

12  own conclusions about important questions in a trial.

13  An exception to this rule exists as to those witnesses

14  who are described as *"expert witnesses."* An *"expert*

15  *witness"* is someone who, by education or by experience,

16  may have become knowledgeable in some technical,

17  scientific, or very specialized area. If such

18  knowledge or experience may be of assistance to you in

19  understanding some of the evidence or in determining a

20  fact, an *"expert witness"* in that area may state an

21  opinion as to a matter in which he or she claims to be

22  an expert.

23      You should consider each expert opinion received

24  in evidence in this case and give it such weight as you

25  think -- as you may think it deserves. You should

consider the testimony of expert witnesses just as you
consider other evidence in this case.  If you should
decide that the opinion of an expert witness is not
based upon sufficient education or experience, or if
you should conclude that the reasons given in support
of the opinion are not sound, or if you should conclude
that the opinion is outweighed by other evidence,
including that of other *"expert witnesses,"* you may
disregard the opinion in part or in its entirety.

        You – the jury – are the sole judges of the facts
of this case.

        Evidence has been received in this case that
certain persons, who are alleged in Count 1 and Count 2
of the indictment to be co-conspirators of the
defendant, have done or said things during the
existence or life of the alleged conspiracy in order to
further or advance its goals.

        Such statements –– excuse me.  Such acts and
statements of these other individuals may be considered
by you in determining whether or not the government has
proven the charges in Counts 1 and 2 of the indictment
against the defendants.

        Since these acts may have been performed and these
statements may have been made outside the presence of
the accused, and even done or said without the

1 accused's knowledge, these acts or statements should be

2 examined with particular care by you before considering

3 them against the defendant who did not do the

4 particular act or make the particular statement.

5       Acts done or statements made by an alleged

6 co-conspirator before a defendant joined a conspiracy

7 may also be considered by you in determining whether

8 the government has sustained its burden of proof in

9 Counts 1 and 2 of the indictment. Acts done or

10 statements made before an alleged conspiracy began or

11 after an alleged conspiracy ended, however, may only be

12 considered by you regarding the person who performed

13 that act or made that statement.

14       The indictment charges that the offenses alleged

15 in Counts 1 through 4 were committed *"on or about"* or

16 *"in or about"* a certain date.

17       Although it is necessary for the government to

18 prove beyond a reasonable doubt that the offense was

19 committed on a date reasonably near the date alleged in

20 the indictment, it is not necessary for the government

21 to prove that the offense was committed precisely on

22 the date charged.

23       Title 18, United States Code, Section 1962(d),

24 makes it unlawful to conspire to violate subsections

25 (a), (b), or (c) of the RICO Act. That's R-I-C-O.

That is, the Racketeer Influenced and Corrupt

Organizations Act.  Section 1962(c) of the RICO Act

provides that:

It shall be unlawful for any person employed by or

associated with any enterprise engaged in, or the

activities of which affect, interstate or foreign

commerce, to conduct or participate, directly or

indirectly, in the conduct of such enterprise's affairs

through a pattern of racketeering activity or

collection of unlawful debt.

Count 1 of the indictment charges the defendants,

Jack Rosga, also known as "Milwaukee Jack;" Mark Jason

Fiel, also known as "Jason;" Harry Rhyne McCall; and

Christopher Timbers, also known as "Alibi," with

violating Section 1962(d).  The indictment charges that

in or about 2005 to on or about June 15, 2010, the

defendants, being persons employed by and associated

with the Outlaws, did knowingly and intentionally

conspire to violate the RICO Act through a pattern of

racketeering activity, which consisted of multiple acts

involving murder, in violation of Virginia and Maine

law; robbery, in violation of the laws of Virginia

North Carolina, South Carolina, and Minnesota; arson,

in violation of South Carolina law; extortion, in

violation of Virginia law and federal law; witness

tampering, in violation of federal law; interstate
travel in aid of racketeering, in violation of federal
law; illegal gambling, in violation of federal law;
distribution of controlled substances, in violation of
federal law; and maintaining a drug-involved premises,
in violation of federal law.

In order to satisfy its burden of proof as to
Count 1, the government must prove the following five
elements beyond a reasonable doubt:

First:  That an enterprise existed as alleged in
the indictment;

Second:  That the enterprise was engaged in or
affected interstate or foreign commerce;

Third:  That the defendant was associated with the
enterprise;

Fourth:  That between June 2005 and June 2010, two
or more persons conspired to conduct or participate in
the affairs of the enterprise, directly, or indirectly,
through a pattern of racketeering activity; and

That the defendant knowingly and willfully became
a member of the conspiracy.

The first element the government must prove beyond
a reasonable doubt is that an *"enterprise"* existed as
alleged in the indictment.

An *"enterprise"* is a group of people who have

associated together for a common purpose for --

An *"enterprise"* is a group of people who have
associated together for a common purpose of engaging in
a course of conduct over a period of time.  This group
of people, in addition to having a common purpose, must
also have an ongoing organization, either formal or
informal, and it must have personnel who function as a
continuing unit.  The group -- the group need not be a
legally cognizable entity, such as a partnership or
corporation.  This group may be organized for a
legitimate and lawful purpose, or it may be organized
for an unlawful purpose.

The government has charged that the enterprise in
this case is the *"American Outlaw Association"* or
*"Outlaws,"* including its leadership, members and
associates, and that the *"common purpose"* included:

Enriching, preserving, expanding and protecting
the power, territory, and prestige of the Outlaws
enterprise, through the use of intimidation, violence,
and threats of violence;

Funding the operation of the Outlaws enterprise
through the collection of dues from members and
probationary members, and by employing other funding
methods, including the imposition of *"taxes"*;

Keeping rival gangs and others in fear of the

1  Outlaw enterprise and in fear of its members and

2  associates through the use of intimidation, violence,

3  and threats of violence;

4        Encouraging and facilitating an atmosphere of

5  violence within the Outlaws enterprise by giving status

6  to those members who commit violent acts for the

7  enterprise; and

8        Maintaining the security of the Outlaws enterprise

9  and avoiding law enforcement scrutiny.

10       If you find that the government has proven that

11  there was a group of people characterized by a common

12  purpose, an ongoing formal or informal organization,

13  and personnel who functioned as a continuing unit, then

14  you may find that an enterprise existed.

15       If you find that this enterprise existed, you must

16  also determine whether this enterprise continued in an

17  essentially unchanged form during substantially the

18  entire period charged in the indictment.  This does not

19  mean that everyone involved has to be the same, but the

20  core of the enterprise must be the same throughout.

21       The second element of the -- the second element

22  the government must prove beyond a reasonable doubt is

23  that the enterprise was engaged in or had an effect

24  upon interstate or foreign commerce.

25       Interstate or foreign commerce includes the

1   movement of goods, services, money, and individuals

2   between states, or between states and the District of

3   Columbia or a United States territory or possession, or

4   between the United States and a foreign state or

5   nation.

6        The government must prove that the enterprise

7   engaged in interstate or foreign commerce in some way,

8   no matter how minimal.  The government need not prove

9   that the alleged racketeering activity affected

10  interstate or foreign commerce, although proof of that

11  racketeering acts -- let me read this again.

12       The government need not prove that the alleged

13  racketeering activity affected interstate or foreign

14  commerce, although proof that racketeering acts did

15  affect interstate or foreign commerce is sufficient to

16  satisfy this element.  It is not necessary to prove

17  that the acts of each respective defendant affected

18  interstate or foreign commerce so long as the act of

19  the enterprise as a whole had such effect.

20       Finally, the government is not required to prove

21  that any defendant knew the enterprise was affecting

22  interstate or foreign commerce.

23       The third element the government must prove beyond

24  a reasonable doubt is that the defendant was associated

25  with the enterprise.  It is not required that the

defendant have been associated with the enterprise for the entire time that the enterprise existed. It is required, however, that the government prove, beyond a reasonable doubt, that at *some* time during the period indicated in the indictment, the defendant in question was associated with the enterprise. A person cannot be associated with an enterprise if he does not know of the enterprise's existence or the nature of its activities. Thus, in order to prove this element, the government must prove, beyond a reasonable doubt, that the defendant was connected to the enterprise in some meaningful way, and that the defendant knew of the existence of the enterprise and of the general nature of its activities.

The fourth element the government must prove beyond a reasonable doubt is that between June 2005 and June 2010, two or more persons conspired to conduct or participate in the affairs of the enterprise, directly or indirectly, through a pattern of racketeering activity.

A criminal conspiracy is an agreement or a mutual understanding knowingly made or knowingly entered into by at least two people to violate the law by some joint or common plan or course of action. A conspiracy is, in a very true sense, a partnership in crime.

1    Because the essence of the -- because the essence
2  of element four is an agreement, you need not find that
3  any racketeering acts were actually committed.  It is
4  sufficient if you find that there was an agreement such
5  acts would be committed.

6    A conspiracy or agreement to violate the law, like
7  any other kind of agreement or understanding, need not
8  be formal, written, or even expressed directly in every
9  detail.  An agreement may be inferred from all of the
10 circumstances and from the conduct of the alleged
11 participants.

12   To prove that a conspiracy existed, the government
13 is not required to show that all the people named in
14 the indictment as members of the conspiracy were, in
15 fact, parties to the agreement, or that all the members
16 of the alleged conspiracy were named or charged, or
17 that all the members of conspiracy agreed to all of the
18 means or methods set out in the indictment.

19   The government must prove that the defendant and
20 at least one other person knowingly and deliberately
21 arrived at some type of agreement or understanding that
22 they, and perhaps others, would violate the law by
23 means of some common plan or course of action as
24 alleged in Count 1 of the indictment.  It is proof of
25 this conscious understanding and deliberate agreement

1  by all the alleged -- excuse me.  It is proof of this

2  conscious understanding and deliberate agreement by the

3  alleged members that should be central to your

4  consideration of the charge of conspiracy.

5      Unless the government proves beyond a reasonable

6  doubt that a conspiracy actually existed, then you must

7  acquit the defendant.

8      The fifth element the government must prove is

9  that the defendant knowingly and willfully became a

10  member of the conspiracy.

11      Before you find that the defendant, or any other

12  person, became a member of the conspiracy charged in

13  Count 1, the evidence in this case must show beyond a

14  reasonable doubt that the defendant knew the purpose or

15  goal of the agreement or understanding, and

16  deliberately entered into the agreement intending, in

17  some way, to accomplish the goal or purpose by this

18  common plan or joint action.

19      If the evidence establishes beyond a reasonable

20  doubt that the defendant knowingly and deliberately

21  entered into an agreement to engage in a pattern of

22  racketeering, the fact that the defendant did not join

23  the agreement at its beginning, or did not know all of

24  the details of the agreement, or did not participate

25  each and every -- let me read this again.

If the evidence establishes beyond a reasonable
doubt that the defendant knowingly and deliberately
entered into an agreement to engage in a pattern of
racketeering, the fact that the defendant did not join
the agreement at its beginning, or did not know all of
the details of the agreement, or did not participate at
each and -- I've got to read this again.  This is a
mouth full.

Even if the evidence establishes beyond a
reasonable doubt that the defendant knowingly and
deliberately entered into an agreement to engage in a
pattern of racketeering, the fact that the defendant
did not join the agreement at its beginning, or did not
know all the details of the agreement, or did not
participate in each, or even any, act of the agreement,
or did not play a major role in accomplishing the
unlawful goal is not important to your decision
regarding membership in the conspiracy.

The government is not required to prove that the
defendant agreed to personally commit two racketeering
acts, nor is the government required to prove that any
defendant actually committed, caused, or aided and
abetted any racketeering act.  Indeed, the government
need not prove that the objectives or purposes of the
conspiracy have been achieved or accomplished.  The

1  ultimate success or failure of the conspiracy is

2  irrelevant.  The conspiratorial agreement is the

3  essential aspect of the RICO conspiracy.

4      Additionally, the government is not required to

5  prove that each co-conspirator explicitly agreed with

6  every other co-conspirator to conduct and participate

7  in the conduct of the affairs of the enterprise through

8  a pattern of racketeering activity, nor is it required

9  to prove that the defendant knew all his fellow

10  conspirators.  Rather, it is only required that the

11  defendant knew the general nature and common purpose of

12  the conspiracy, and that the conspiracy extended beyond

13  his individual role.  The elements of the RICO

14  conspiracy, such as the conspiratorial agreement, the

15  defendant's knowledge of it, and the defendant's

16  participation in the conspiracy, may be inferred from

17  circumstantial evidence.

18      Keep in mind, however, that merely associating

19  with others and discussing common goals, mere

20  similarity of conduct between or among such persons,

21  merely being present at the place where a crime takes

22  place or is discussed, or even knowing about criminal

23  conduct does not, of itself, make someone a member of

24  the conspiracy or a conspirator.  The government must

25  prove that the defendant adopted the goal of furthering

1  or facilitating, in some way, the objective of the

2  conspiracy, and that the conspiracy itself involved, or

3  would have involved, the commission of two racketeering

4  acts.

5       The word *"racketeering"* has certain implications

6  in our society.  Use of that term in this statute and

7  in this courtroom should not be regarded as having

8  anything to do with your determination of whether the

9  guilt of this defendant has been proven.  The term is

10  only a term used by Congress to describe the statute.

11       The terms *"racketeering activity"* or *"racketeering*

12  *acts,"* as used in these instructions, means specific

13  illegal actions.  Count 1 of the indictment alleges the

14  following intended racketeering acts:  Murder, in

15  violation of Virginia and Maine law; robbery, in

16  violation of Virginia, North Carolina, South Carolina,

17  and Minnesota law; arson, in violation of South

18  Carolina law; interstate travel in aid of racketeering,

19  in violation of federal law; extortion, in violation of

20  Virginia and federal law; witness tampering, in

21  violation of federal law; interstate travel in aid of

22  racketeering, in violation of federal law; illegal

23  gambling, in violation of federal law; distribution of

24  controlled substances, in violation of federal law; and

25  maintaining a drug-involved premises, in violation of

federal law.

A *"pattern of racketeering activity"* requires at least two acts of racketeering activity that are related to the enterprise and to each other and that post a threat of continued criminal activity. Remember, however, that the alleged racketeering acts need not have been committed.  It is sufficient if there was an agreement that such acts would be committed.

To prove that the intended acts of racketeering are related, the government must prove that the acts have the same or similar intended purposes, results, participants, victims, or method of commission, or that they were otherwise interrelated by distinguishing characteristics and are not isolated events.  It is not sufficient for the government to prove only that two acts of racketeering were committed or intended to be committed.  A series of disconnected crimes does not constitute a pattern of racketeering activity, nor would disconnected crimes pose a threat of continued racketeering activity.

In determining whether the government has proven the threat of continuing unlawful -- continued unlawful activity, you are not limited to consideration of the specific racketeering acts charged against the

1  defendant; rather, you may also consider the nature of

2  the enterprise and other unlawful activities of the

3  enterprise and members viewed in their entirety,

4  including both charged and uncharged unlawful

5  activities.

6      The government has alleged that multiple

7  racketeering acts were intended to be committed as part

8  of the racketeering enterprise.  In order for the

9  defendant to be guilty of the RICO conspiracy charged

10 in Count 1, you must find that two or more of the

11 alleged racketeering acts – whether actually committed

12 or merely planned to be committed – were intended as a

13 part of the conspiracy.

14     The elements of the alleged racketeering acts are

15 as follows:

16     Number 1.  Any act or threat involving Murder, in

17 violation of Virginia law.

18     The government has alleged that one of the

19 objectives of the conspiracy charged in Count 1 was to

20 commit murder of rival gangs within the Commonwealth of

21 Virginia.

22     Under Virginia law, murder is the killing of

23 another person with either the intent to kill or the

24 intent to inflict such serious bodily harm that death

25 would be the likely result.

Number 2.  Any act or threat involving Murder, in violation of Maine law.

The government has alleged that one of the objectives of the conspiracy charged in Count 1 was to commit murder of rival gang members in the State of Maine.

Under Maine law, murder is the intentional and knowing killing of another human being or the intentional engagement in conduct that an individual should have known would create a very high risk of death or serious bodily injury.

Number 3.  Any act or threat involving Robbery, in violation of Virginia law.

The government has alleged that one of the objectives of the conspiracy charged in Count 1 was to commit robbery of rival gang members and/or their associates within the Commonwealth of Virginia.

Under Virginia law, robbery is the taking of the personal property of another against his will, by force, threat, or intimidation, from his presence, with the intent to permanently deprive the victim of his property.  Property means anything of value.

Number 4.  Any act or threat involving Robbery, in violation of North Carolina law.

The government has alleged that one of the

objectives of the conspiracy charged in Count 1 was to

commit robbery of rival gang members or their

associates within the State of North Carolina.

Under North Carolina law, robbery is the

non-consensual taking of money or personal property of

the person or presence of another, by means of violence

or fear, with the intent to permanently deprive the

owner of the property.

Number 5.  Any act or threat involving Robbery, in

Violation of South Carolina law.

The government has alleged that one of the

objectives of the conspiracy charged in Count 1 was to

commit robbery of rival gang members and/or their

associates within the State of South Carolina.

Under South Carolina law, robbery is the unlawful

taking of money, goods, or other personal property of

any value from the person or presence of the person,

with the intent to permanently deprive him of his

property, by violence or placing the victim in fear of

violence.

6.  Any act or threat involving Robbery, in

violation of Minnesota law.

The government has alleged that one of the

objectives of the conspiracy charged in Count 1 was to

commit robbery of rival gang members and/or their

1  associates within the State of Minnesota.

2      Under Minnesota law, robbery is the taking of

3  personal property from the person or in the presence of

4  another, through the use of threat of imminent force

5  against any person, to overcome the person's resistance

6  or powers of resistance to, or compel acquiescence in,

7  the taking or carrying away of the property.

8      7.  <u>Any act or threat involving Arson, in</u>

9  <u>violation of South Carolina law</u>.

10     The government has alleged that one of the

11 objectives of the conspiracy charged in Count 1 was to

12 commit arson in the State of South Carolina.

13     Under South Carolina law, arson is the malicious

14 and willful burning, setting of fire to, or causing an

15 explosion, or the aiding or counseling thereof, of a

16 building, dwelling, or structure, resulting in damage

17 to the building.  *"Damage"* means an application of fire

18 or explosive that results in burning, charring,

19 blistering, scorching, smoking, singeing, discoloring,

20 or changing the fiber or composition of a building,

21 structure, or dwelling.

22     8.  <u>Any act of threat involving Extortion, in</u>

23 <u>violation of Virginia law</u>.

24     The government has alleged that one of the

25 objectives of the conspiracy charged in Count 1 was to

1  commit extortion within the Commonwealth of Virginia.

2  Under Virginia law, extortion is the obtaining of

3  money, property or pecuniary benefit through the use of

4  threats to the person or property of another.

5  Pecuniary benefit means anything of value.

6  The government has alleged that one of the

7  objectives of the conspiracy charged in Count 1 was to

8  commit extortion, in violation, of federal law.

9  The federal extortion statute, codified at Section

10  1951 of Title 18 of the United States Code, provides in

11  relevant part that *"whoever in any way or degree*

12  *obstructs, delays or affects commerce or the movement*

13  *of any article or commodity in commerce, by extortion*

14  *or attempts or conspires to do so, or commits or*

15  *threatens physical violence to any person or property*

16  *in furtherance of a plan or purpose to do anything in*

17  *violation of this section,"* is guilty of a violation of

18  this section.

19  Extortion, in violation of federal law, consists

20  of three essential elements:

21  Number 1.  The defendant induced the victim to

22  part with property;

23  2.  The defendant obtained such property with the

24  victim's consent, but caused or induced such consent by

25  the wrongful use of actual or threatened force or

1 violence; and

2     Third.  In so acting, interstate commerce was

3 obstructed, delayed, or affected.

4     10.  Witness Tampering, in violation of federal

5 law.

6     The government has alleged in one of the

7 objectives of the conspiracy charged in Count 1 was to

8 commit witness tampering, in violation of federal law.

9 Specifically, the government has alleged that the

10 enterprise charged in Count 1 intended to commit

11 witness tampering in connection with the events which

12 allegedly occurred on or about November 20, 2008, at

13 the Hard Times Cafe in Fredericksburg, Virginia.

14     The federal witness tampering statute, codified at

15 Section 1512(b)(3) of Title 18 of United States Code,

16 provides, in relevant part, that *whoever knowingly*

17 *uses intimidation or physical force, threatens, or*

18 *corruptly persuades another person, or attempts to do*

19 *so, or engages in misleading conduct towards another*

20 *person, with intent to hinder, delay, or prevent the*

21 *communication to a law enforcement officer or judge of*

22 *the United States of information relating to the*

23 *commission or possible commission of a federal offense"*

24 is guilty of a crime.

25     If you find beyond a reasonable doubt that the

alleged assault at the Hard Times Cafe was committed in

furtherance of the alleged conspiracy to violate RICO,

as charged in Count 1, such assault would constitute a

federal offense.

    <u>Interstate Travel in Aid of Racketeering, in</u>

<u>violation of federal law</u>.

    The government has alleged that one of the

objectives of the conspiracy charged in Count 1 was to

commit interstate travel in aid of racketeering, in

violation of federal law.

    The interstate travel in aid of racketeering

statute, codified in Section 1952(a) of Title 18 of the

United States Code, provides in relevant part, that

whoever travels in interstate commerce or uses the mail

or any facility in interstate commerce, with the intent

to commit any crime of violence to further any unlawful

activity, and thereafter actually commits or attempts

to commit a crime of violence, is guilty of the

offense.  It further provides that whoever travels in

interstate commerce or uses the mail or any facility in

interstate commerce with the intent to otherwise

promote, manage, establish, carry on, or facilitate the

promotion, management, establishment, or carrying on of

any unlawful activity, and thereafter performs or

attempts to perform this end, is guilty of the offense.

1    *"Unlawful activity"* means, in relevant part,

2    extortion, arson, or illegal gambling, in violation of

3    the laws of the State in which they were –– *"Unlawful*

4    *activity"* means, in relevant part, extortion, arson, or

5    illegal gambling, in violation of the laws of the State

6    in which they are committed or of the United States.

7    Extortion and arson have already been defined for you.

8    (See subsections seven through nine of this

9    instruction.)   Illegal gambling is defined below.

10    The government has alleged that one of the

11    objectives of the conspiracy charged in Count 1 was to

12    engage in illegal gambling, in violation of federal

13    law.

14    The federal gambling statute, codified in Section

15    1955 of Title 18 of the United States Code, provides in

16    relevant part that whoever *"conducts, finances,*

17    *manages, supervises, directs, or owns all or part of an*

18    *illegal gambling business"* is guilty of the offense.

19    The statute defines an *"illegal gambling business"* as a

20    gambling business that:  Is in violation of the law of

21    the State in which it is conducted; it involves five or

22    more persons who conduct, finance, manage, supervise,

23    direct, or own all or part of such business; and has

24    been or remains in substantially, continuous operation

25    for a period in excess of thirty days or has a gross

1  revenue of $2,000 in any single day.

2      In this case, the government has alleged that a

3  gambling business was conducted in North Carolina, in

4  violation of North Carolina law.  North Carolina Code

5  Section 14-292 provides that *"any person or*

6  *organization that operates any game of chance or any*

7  *person who plays at or bets on any game of chance at*

8  *which any money, property or other thing of value is*

9  *bet, whether the same be in stake or not"* shall have

10 violated the statute.

11     Additionally, North Carolina Code Section

12 14-306.1A provides that it shall be unlawful *"for any*

13 *person to operate, allow to be operated, place into*

14 *operation, or keep in that person's possession for the*

15 *purpose of operation any video gaming machine."*  A

16 *"video gaming machine"* is defined as *"a slot machine*

17 *and other form of electrical, mechanical, or computer*

18 *games such as a video poker game or any other type of*

19 *video playing card game."*

20     The government has also alleged that one of the --

21 excuse me.

22     13.  <u>Distribution of Controlled Substances, in</u>

23 <u>violation of federal law</u>.

24     The government has also alleged that one of the

25 objectives of the conspiracy charged in Count 1 was to

distribute, or possess with the intent to distribute,
or conspire to distribute, controlled substances, in
violation of Title 21, United States Code, Section
841(a) and 846.

Section 841(a) makes it unlawful for any person to
knowingly or intentionally distribute a controlled
substance.

Section 846 makes it unlawful for any person to
attempt or conspire to commit any offense defined in
Section 841.

<u>Maintaining a Drug-Involved Premises, in violation
of federal law</u>.

This is Number 14.

Finally, the government has alleged that one of
the objectives of the conspiracy changed in Count 1 was
to maintain a drug-involved premises, in violation of
federal law.

The federal statute prohibiting this alleged
racketeering act is codified at Section 856(a) of Title
21 of the United States Code.  It provides, in relevant
part, it is unlawful to knowingly open, lease, rent,
use, or maintain any place, whether permanently or
temporarily, for the purpose of manufacturing,
distributing or using any controlled substance, or
manage or control any place, whether permanently or

1  temporarily, either as owner, lessee, agent, employee,

2  occupant, or mortgagee, and knowingly and intentionally

3  rent, lease, profit from or make available for use,

4  with or without compensation, the place for the purpose

5  of manufacturing, storing, distributing, or using a

6  controlled substance.

7      *"Maintaining"* a place means that over a period of

8  time, the defendant must have a substantial connection

9  to the premises, and must be more than a casual

10 visitor.

11     The government is not required to prove that drug

12 activity was the defendant's sole purpose in

13 maintaining or managing the place, but instead must

14 prove that drug activity was a significant reason why

15 the defendant maintained or managed the place.

16     In order to convict the defendant of the RICO

17 conspiracy offense charged in Count 1, you must find

18 that at least two -- you must find that -- let me

19 restart this again.

20     In order to convict the defendant of the RICO

21 conspiracy offense charged in Count 1, you must first

22 find that at least two acts or threats involving

23 murder, robbery, arson, or extortion; acts of witness

24 tampering, interstate travel in aid of racketeering,

25 illegal gambling, distribution of controlled

substances, or maintaining a drug-involved premises; or
any combination thereof, were intended as part of the
conspiracy.  All twelve of you must agree as to which
specific type or types of racketeering activity were
intended as part of the alleged RICO conspiracy.

Again, the government is not required to prove
that any defendant personally committed any
racketeering acts, or that any defendant agreed to
personally commit two racketeering acts.  Rather, it is
sufficient if the government proves beyond a reasonable
doubt that the defendant agreed to participate in the
RICO conspiracy with the knowledge and intent that at
least one member of the conspiracy would commit at
least two acts of racketeering in the affairs of the
enterprise, whether those acts were actually committed
or not.

On the verdict sheet you'll be -- on the verdict
sheet you will be asked whether you find the defendant
guilty or not guilty of the charge in Count 1.  If you
find the defendant guilty, you will be asked to specify
which type or types of racketeering activity you find
to have been the objective or objectives of the
conspiracy he joined.

Count 2 of the indictment charges the defendants
with conspiracy to commit a violent crime in aid of

racketeering, in violation of Section 1959(a)(6) of
Title 18 of the United States Code.  The indictment
charges that in or about March 2006 through June 15,
2010, for the purpose of gaining entrance into and
maintaining and increasing position in an enterprise
engaged in racketeering activity – namely, the
Outlaws – the defendants Jack Rosga, also known as
"Milwaukee Jack;" Mark Jason Fiel, also known as
"Jason;" Harry Rhyne McCall; and Christopher Timbers,
also known as "Alibi," did knowingly and unlawfully
conspire with each other and with others known and
unknown to the Grand Jury, to commit assault with a
dangerous weapon and assault resulting in serious
bodily injury to rival motorcycle gang members, in
violation of the laws of Virginia, North Carolina,
South Carolina, and Maine.

In order for you to find the defendant guilty of
Count 2, the government must prove beyond a reasonable
doubt each of the following six elements of the
offense:

Number 1.  That an enterprise existed, as alleged
in Count 1;

2.  That the enterprise was engaged in or affected
interstate or foreign commerce;

3.  That the enterprise was engaged in

racketeering activity;

4.   That the defendant had or was seeking a position in the enterprise;

5.   That the defendant conspired to commit the alleged crime of violence; and

That the defendant's general purpose in conspiring to commit the crime of violence was to maintain or increase his position in the enterprise.

The first two elements that the government must prove beyond a reasonable doubt – that the *"Outlaws"* was an *"enterprise"* which was engaged in or had an effect upon interstate or foreign commerce – have already been explained to you.  (See Jury Instructions 24 and 25.)

The third element the government must prove beyond a reasonable doubt is that the enterprise was *"engaged in"* racketeering activity.  I have already explained to you the various racketeering activities charged in this case – namely, murder, robbery, arson, extortion, witness tampering, interstate travel in aid of racketeering, illegal gambling, distribution of controlled substances, and maintaining a drug-involved premises.  (These are more particularly described in Jury Instructions 30 and 31.)

You should give the words *"engaged in"* their

ordinary, everyday meaning.  If the government proves
that the enterprise committed or was planning to commit
some racketeering activity within a period of time
short enough under all the circumstances such that it
is appropriate to say that the enterprise was *"engaged
in"* racketeering activity, then you may find that this
third element has been satisfied.

The fourth element the government must establish
beyond a reasonable doubt is that the defendant had or
was seeking a position in the enterprise.

In order to establish this element, the government
must prove that the defendant was actually a member of
the enterprise or was seeking membership in the
enterprise.  It is not enough for the government to
prove that the defendant was merely doing business with
the enterprise.

The fifth element the government must establish
beyond a reasonable doubt is that the defendant
conspired to commit the alleged crime of violence –
assault with a dangerous weapon or assault resulting in
serious bodily injury.

I have already instructed you on what the
government must prove in order for you to find that a
conspiracy existed and that the defendants knowingly
and willfully entered into a conspiracy.  (These are in

Jury Instructions 28 and 29.)

For Count 2, the government must prove beyond a reasonable doubt that the defendant knowingly and willfully entered into a conspiracy, the object of which was to commit assault with a dangerous weapon or assault resulting in serious bodily injury to rival motorcycle gang members, in violation of the laws of Virginia, North Carolina, South Carolina, and Maine.

Under Virginia law, assault with a dangerous weapon is the holding, pointing or brandishing of a firearm, whether capable of being fired or not, in such a manner as to reasonably induce fear in the mind of another of being shot or injured. Assault resulting in serious bodily injury is the malicious wounding -- excuse me. Assault resulting in serious bodily injury is the malicious shooting, stabbing, cutting, or wounding of a person, or the causing of bodily injury by any means, with the intent to maim, disfigure, disable or kill. *Malicious* means the intent to commit a wrongful act without justification or excuse.

Under North Carolina law, assault with a dangerous weapon is the infliction or attempt to inflict serious bodily injury upon another person with the use of a deadly weapon.

Under South Carolina law, assault resulting in

serious bodily injury is the unlawful act of violent

injury to another, accompanied by serious bodily

injury.

     Under Maine law, assault with a dangerous weapon

is intentionally, knowingly, and recklessly causing

bodily injury to another with the use of a deadly

weapon.  Assault resulting in serious bodily injury is

intentionally, knowingly, and recklessly causing

serious bodily injury to another person or bodily

injury to another person under circumstances

manifesting extreme indifference to the value of human

life.

     The sixth element the government must establish

beyond a reasonable doubt is that the defendant's

general purpose in conspiring to commit assault with a

dangerous weapon or assault resulting in serious bodily

injury was to maintain or increase his position in, or

to gain interest into, the enterprise.  The government

is not required to prove that it was the defendant's

sole or principal motive.

     In determining whether a defendant's purpose in

conspiring to commit the alleged assault was to

maintain or increase his position in the enterprise,

you should give the words *"maintain"* and *"increase"*

their ordinary meanings.  You should consider all of

1  the facts and circumstances in making that

2  determination.

3      Count 3 of the indictment charges the defendants,

4  Harry Rhyne McCall; Christopher Timbers, also known as

5  "Alibi;" and Dennis Haldermann, also known as "Chew

6  Chew," with committing a violent crime in aid of

7  racketeering, in violation of Title 18, United States

8  Code, Sections 1959(a)(3) and 2.  The indictment

9  charges that on or about March 14, 2009, the

10  defendants, aided and abetted by each other and by

11  Leslie Werth, also known as "Les;" William Davey, also

12  known as "Rebel;" William Powell, also known as

13  "Torch;" Michael Mariaca, also known as "M&M;" Michael

14  Smith; Charles Love, also known as "Chuck," also known

15  as "Rebar;" and Charles Barlow, also known as "Chuck,"

16  for the purpose of gaining entrance to, and maintaining

17  and increasing position in, an enterprise engaged in

18  racketeering activity – namely, the Outlaws, did commit

19  assault with a dangerous weapon against certain members

20  of the Desperados Motorcycle Club, in violation of the

21  laws of Virginia.

22      In order for you to find the defendant guilty of

23  the offense charged in Count 3, the government must

24  establish each of the following six elements beyond a

25  reasonable doubt:

First:  That an enterprise existed, as alleged in the indictment;

Second:  That the enterprise was engaged in or affected interstate or foreign commerce;

Fourth:  That the enterprise was engaged in racketeering activity.

Excuse me.  Let me go back and start again.

First:  That an enterprise existed, as alleged in the indictment;

Second:  That the enterprise was engaged in or affected interstate or foreign commerce;

Third:  That the enterprise was engaged in racketeering activity;

Fourth:  That the defendant had or was seeking a position in the enterprise;

Fifth:  That the defendant committed or aided and abetted in the commission of the alleged crime of violence; and

Sixth:  That the defendant's general purpose in committing the crime of violence was to maintain or increase his position in the enterprise.

The first four elements that the government must prove beyond a reasonable doubt have already been explained to you in Instructions 24, 25, 30, 35, and 39.)

1    The fifth element that the government must

2 establish beyond a reasonable doubt is that the

3 defendant committed or aided and abetted in the

4 commission of the alleged crime of violence – in this

5 case, assault with a dangerous weapon, or a conspiracy

6 to commit such assault, in violation of Sections

7 18.2-51 and 18.2-282 of the Code of Virginia.  It is

8 sufficient if the government establishes that the

9 defendant violated or conspired to violate either of

10 these statutes.

11    An assault in violation of Section 18.2-51

12 consists of three essential elements:

13    First:  That the defendant shot, stabbed, cut, or

14 wounded a person, or by any means caused him bodily

15 injury;

16    Second:  That the defendant did so with the intent

17 to maim, disfigure, disable, or kill that individual;

18 and

19    Third:  That the defendant did so with a dangerous

20 weapon.

21    An assault in violation of Section 18.2-282 also

22 consists of three essential elements:

23    First:  That a person pointed, held, or brandished

24 a firearm;

25    Second:  That he did so in such a manner as to

reasonably induce fear in the mind of another of being
shot or injured; and

Third:  That he did so while not engaged in
excusable or justifiable self-defense.

Because Count 3 charges the defendants with
conspiracy to violate Sections 18.2-51 or 18.2-282, the
alleged assault need not have been actually committed.
It is enough if the government proves beyond a
reasonable doubt, that the defendant joined an
agreement to commit the assault.

If you believe that the defendant was to some
degree at fault in provoking or bringing on the
confrontation, but you further believe:

First:  That he retreated as far as he safely
could under the circumstances in a good faith attempt
to abandon the confrontation;

Two:  That he made known his desire for peace by
word or act;

Three:  That he reasonably feared, under the
circumstances as they appeared to him, that he was in
imminent danger or bodily harm; and

Four:  That he used no more force, under the
circumstances as they appeared to him, than was
reasonably necessary to protect himself under the
perceived harm,

1    Then he acted in self-defense, and you should find
2  the defendant not guilty.

3    As mentioned, one of the ways in which the
4  government may establish the fifth element – the crime
5  of violence element – of Count 3 is by proving, beyond
6  a reasonable doubt, that the defendant *"aided and*
7  *abetted"* the alleged assault with a dangerous weapon.

8    A person may violate the law even though he does
9  not personally do each and every act constituting the
10 offense if that person *"aided and abetted"* the
11 commission of the offense.

12   Title 18, United States Code, Section 2(a)
13 provides:

14   Whoever commits an offense against the United
15 States or aids, abets, counsels, commands, induces or
16 procures its commission, is punishable as a principal.

17   Before a defendant may be held responsible for
18 aiding and abetting others in the commission of a
19 crime, the government must prove beyond a reasonable
20 doubt that the defendant knowingly and deliberately
21 associated himself in some way with the crime charged
22 and participated in it with the intent to commit the
23 crime.

24   In order for you to find that the defendant aided
25 and abetted the commission of the assault charged in

Count 3, the government must prove beyond a reasonable
doubt that the defendant knew that the crime charged
was to be committed or was being committed; knowingly
did some act for the purpose of aiding, commanding, or
encouraging the commission of that crime; and acted
with the intention of causing the crime charged to be
committed.

Before a defendant may be found guilty as an aider
and abettor to the crime, the government must also
prove, beyond a reasonable doubt, that someone
committed each of the essential elements of the assault
with a dangerous weapon, as detailed for you in Jury
Instruction Number 45.

Merely being present at the scene of the crime or
merely knowing that a crime is being committed or is
about to be committed is not enough for the jury to
find that the defendant aided and abetted the
commission of that crime.  The government must prove
that the defendant knowingly associated himself with
the crime in some way as a participant – someone who
wanted the crime to be committed – and not as a mere
spectator.

The sixth element that the government must
establish beyond a reasonable doubt is that the
defendant's general purpose in committing or aiding and

1  abetting the commission of the assault with a dangerous

2  weapon was to maintain or increase his position in, or

3  to gain entrance into, the enterprise.  I have already

4  instructed you on what is necessary to prove this

5  element in Instruction Number 39.

6      Count 4 of the indictment charges that on or about

7  March 14, 2009, the defendants Harry Rhyne McCall and

8  Christopher Timbers, also known as "Alibi;" aided and

9  abetted by each other and by Les Werth, also known as

10  "Les;" William Davey, also known as "Rebel;" Michael

11  Mariaca, also known as "M&M;" and Michael Smith, did

12  knowingly and unlawfully possess firearms in

13  furtherance of a crime of violence for which they may

14  be prosecuted in a court of the United States – namely,

15  violence in aid of racketeering, as charged in Count 3

16  of the indictment.

17      Title 18, United States Code, Section

18  924(c)(1)(A), provides in pertinent part:

19      Whoever, in furtherance of any crime of violence

20  for which he may be prosecuted in a court of the United

21  States possesses a firearm, shall be guilty of a crime

22  against the United States.

23      In order to sustain its burden of proof for the

24  crime of possessing a firearm in furtherance of a crime

25  of violence, as charged in Count 4 of the indictment,

the government must prove the following two essential
elements beyond a reasonable doubt:

First:  The defendant committed the crime charged
in Count 3 of the indictment; and

In furtherance of that crime, the defendant did
knowingly possess a firearm.

The term *"firearm"* means *"any weapon which will or
is designed to or may readily be converted to expel a
projectile by the actions of an explosive; and the
frame or receiver of any such weapon."*  The weapon need
not have been loaded or operable at the time of the
offense in order to constitute a *"firearm."*

The government must prove that the defendant's
possession of the firearm was *"in furtherance"* of a
crime of violence.  The term *"crime of violence"* refers
to the assault with a dangerous weapon charged in Count
3 of the indictment.  To establish that the possession
of the firearm was in furtherance of the offense in
Count 3, it is not necessary for the government to
prove that the defendant actively employed the firearm.
Rather, the government may meet its burden if it proves
that the firearm was used to advance or help the
defendant in some way in his assault with a dangerous
weapon.

If you do not find that all elements of Counts 3

and 4 have been proven beyond a reasonable doubt as to
the defendant, you may nevertheless find the defendant
guilty of crimes charged in Counts 3 and 4 based upon
co-conspirator liability.

Co-conspirator liability provides a basis for
finding the defendant guilty of a substantive crime
charged in the indictment even if the government has
not satisfied its burden of proof with respect to each
element of the substantive crime as to that particular
defendant.

A co-conspirator is a person who knowingly and
intentionally agrees with one or more persons to
accomplish an unlawful purpose. A co-conspirator is
liable for offenses committed by his fellow
co-conspirators if he was a member of the conspiracy
when the offense was committed and if the offense was
committed in furtherance of the conspiracy.

Accordingly, if you find, beyond a reasonable
doubt, that the defendant is guilty of the conspiracy
crime charged in Count 1, then you may also find him
guilty of the substantive crimes charged in Counts 3
and 4 if you find that each of the following elements
have been proven beyond a reasonable doubt:

First:  That the crime charged in the substantive
count was committed;

Second:  That the person or persons you find
actually committed the crime were members of the
conspiracy you found to have existed;

Third:  That the substantive crime was committed
pursuant to the common plan and understanding you found
to exist among the conspirators;

Fourth:  That the defendant was a member of the
conspiracy at the time the substantive crime was
committed; and

Fifth:  That the defendant could have reasonably
foreseen that the substantive crime might be committed
by his co-conspirators.

If you find that all five of these elements have
been proven beyond a reasonable doubt, then you may
find the defendant guilty of the substantive crimes
charged against him in Counts 3 and 4, even if he
neither personally participated in the acts
constituting the crime, nor had actual knowledge of
them.

Ladies and gentlemen, those are the instructions
that will govern your deliberations.  You will take
copies of them with you back to the jury room, and you
may consult with them and refer to them as necessary
during the course of your deliberations.

Now, ladies and gentlemen, we're going to begin

1  final arguments here in a just a moment, before you sit

2  through the arguments of counsel, I'm going to let you

3  take a five minute recess and give counsel a chance to

4  get themselves organized.  When we come back, we'll

5  launch right into the final arguments.

6       You may now retire to the jury room for just about

7  five minutes.

8    (The jury is no longer present in the courtroom.)

9       THE COURT:  Can everybody be ready in five minutes

10  to begin their final arguments?

11      MR. DUFFEY:  Yes, sir.

12      THE COURT:  We'll take a short five minute recess,

13  and we'll get right into the final arguments.

14                    (Recess taken.)

15                 REPORTER'S CERTIFICATE

16           I, Krista M. Liscio, OCR, RMR, Notary

17  Public in and for the Commonwealth of Virginia at

18  large, do hereby certify that the pages contained

19  herein accurately reflect the notes taken by me, to

20  the best of my ability, in the above-styled action.

21           Given under my hand this 26th day of April,

22  2012.

23                    _____

                      Krista M. Liscio, RMR
24                    Official Court Reporter

25