 


IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No.: 3:10CR170-1-HEH |
| ) | Civil Action No.: 3:13CV792-HEH |
| JACK ROSGA, ) | |
| ) | |
| Petitioner. ) | |

## MEMORANDUM OPINION
### (Denying Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255)

Petitioner Jack Rosga ("Rosga"), a federal inmate, was convicted by a jury of this Court on December 21, 2010[1] of Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. §§ 1961–1968 (Count One), and Conspiracy to Commit Violence in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(6) (Count Two). On April 8, 2011, Rosga was sentenced to 240 months on Count One and 36 months on Count Two, to run concurrently with the sentence imposed on Count One. Rosga's convictions were affirmed by the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") on August 2, 2012. *Werth v. United States*, 493 F. App'x 361, 367–68 (4th Cir. 2012). His petition for certiorari was denied by the United States Supreme Court on December 3, 2012. Rosga is currently serving his sentence at the Federal Correctional Institute Victorville in Victorville, California.

---

[1] Rosga's case was originally tried on October 20, 2010, in the first of two groups of the Outlaws Motorcycle Club ("Outlaws") defendants. (Mem. Order Severing Defs.' Mot. for Trial, ECF No. 454.) However, a mistrial was declared after the jury was unable to reach a unanimous verdict. *United States v. Rosga*, No. 3:10CR170, ECF No. 561.

The case is presently before the Court on Rosga's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion," ECF No. 1040), which was timely filed. The United States has filed a memorandum supporting its position. Although the centerpiece of Rosga's petition is a claim of ineffective assistance of counsel, he also challenges the constitutionality of judicial fact finding in applying certain sentencing guideline enhancements. (Pet'r's Mem. Supp. § 2255 Mot., ECF No. 1041.) The undercurrent of his petition, however, is a re-argument of a number of issues exhaustively addressed by this Court and rejected by the Fourth Circuit in its unpublished per curiam opinion of August 2, 2012. *See Werth*, 493 F. App'x at 365–70.

This Court's analysis begins with recognition of well-settled principle that unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral review is limited. *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). As Chief Justice Rehnquist noted in *Brecht v. Abrahamson*, "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness. . . . Accordingly, it hardly bears repeating that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." 507 U.S. 619, 633–34 (1993) (internal quotation marks and citations omitted). Appropriately then, errors of law do not typically provide a basis for habeas relief under 28 U.S.C. § 2255 unless it constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Timmreck*, 441 U.S. 780, 783 (1979).

Rosga's first claim focuses on the mechanics of the sentencing process, specifically a sentencing enhancement for what he argues to be fact-based relevant conduct. Specifically, Rosga contends:

> *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (June 17, 2013), requires a vacatur of the defendant's sentence, as the cross-referencing of defendant's purported "relevant conduct" under United States Sentencing Guidelines ("U.S.S.G.") §2A2.1 for attempted murder, a 33 level increase, required that the jury find these *de facto* elements established beyond a reasonable doubt.

(Pet'r's Mem. Supp. Mot. § 2255 at 3–4.)

Rosga correctly construes *Alleyne* as recognizing the Sixth Amendment implications of increasing the floor, as opposed to the ceiling, of sentencing exposure. (*Id.* at 4) (citing *Alleyne*, 133 S. Ct. at 2160–2161.)[2] In particular, Rosga contends that the sentencing enhancement resulting from the cross reference to attempted homicide involved factual issues that should have been presented to the jury for a determination under a reasonable doubt standard.

Rosga's construction of *Alleyne*, however, extends beyond the contours of the Supreme Court's reasoning. Indeed, *Alleyne* has no application to the facts at hand. In *Alleyne*, the Supreme Court held that "any fact [] increase[ing] the mandatory minimum is an element that must be submitted to the jury." *Id.* at 2155 (internal quotation marks omitted). The court in *Alleyne* further explained that "[a]ny fact that, by law, increases the penalty for a crime is an element that must be submitted to the jury and found beyond

---

[2] The cross reference to attempted homicide was applied because the evidence revealed that Rosga, as National President of the Outlaws Motorcycle Club, either directly or indirectly, tasked a subordinate gang member to kill a member of a rival gang.

3

a reasonable doubt." *Id.* (citing *Apprendi v. New Jersey*, 530 U.S. 466, 483 n.10 (2000)). Under Rosga's reasoning, however, any aggravating fact potentially lengthening a sentence within an established statutory range constitutes an element of the crime. This assertion is based on a misconstruction of the holding in *Alleyne*. As the Fourth Circuit noted in the recent case of *United States v. Benn*, "[f]actual findings made for purposes of applying the U.S. Sentencing Guidelines, which influence the sentencing judge's discretion in imposing an advisory guideline sentence and do not result in an imposition of a mandatory minimum sentence, do not violate the rule in *Alleyne*." 572 F. App'x 167, 2014 WL 2109806 at *11 (4th Cir. May 21, 2014) (quoting *United States v. Ramirez-Negrón*, 751 F.3d 42, 48 (1st Cir. 2014)). Assuming *arguendo* that *Alleyne* has retroactive application to the judgment in Rosga's case, the claim has no merit and will be dismissed.[3]

Rosga's second claim stands on equally tenuous footing. Premised on the same logic and authority advanced in support of his first claim, Rosga contends that the trial court's application of a four-level enhancement for his leadership role pursuant to U.S.S.G. § 3B1.1(a) violated his Sixth Amendment right to a jury trial. (Pet'r's Mem. Supp. § 2255 Mot. at 8.) Rosga argues that the factual findings necessary to impose the

---

[3] Even if the rule announced in *Alleyne* applied to Rosga's case, it is doubtful that it would be retroactive. Rules governing the sentencing process are ordinarily considered to be procedural, as opposed to substantive, and therefore have no application to cases which become final before the new rules are announced. *United States v. Mathur*, 685 F.3d 396, 399 (4th Cir. 2012); *Teague v. Lane*, 489 U.S. 288, 310 (1989). Moreover, none of the recognized exceptions to this limitation on retroactivity apply in the immediate case. *Saffle v. Parks*, 494 U.S. 484, 494–95 (1990); *Penry v. Lynaugh*, 492 U.S. 302, 329–30 (1989).

4

enhancement required a specific jury finding. The Court disagrees with Rosga's interpretation of *Alleyne* in this context as well.

Rosga's third claim is closely allied with Claims One and Two. Positing that the sentencing enhancements addressed in the first two claims were unconstitutionally applied, Rosga argues that this Court must now revisit its finding as to the 18 U.S.C. § 3553(a)(6) factors, namely that any sentencing disparity among members of the Outlaws motorcycle organization was warranted. (Pet'r's Mem. Supp. Mot. § 2255 at 8–12.) This argument, however, is premised on a finding that the sentencing enhancements were applied in violation of his alleged Sixth Amendment right to factual findings by a jury. As discussed in detail above, this argument is based on a misconstruction of the Supreme Court's holding in *Alleyne*. Consequently, this claim lacks merit and will be dismissed.

Rosga's final two claims are cloaked as allegations of ineffective assistance of trial counsel. On close examination, however, the overarching theme of these claims is overzealous prosecutorial tactics and outrageous governmental conduct. (*Id.* at 12–18.) In his view, trial counsel should have focused more attention on the investigative strategy employed by special agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") which, he contends, crossed constitutional boundaries. Rosga believes that his trial counsel should have more aggressively challenged the government's conduct. Given the strength of the government's case, however, it is doubtful that this diversionary tactic would have had any likelihood of success.

The standard of review for petitions alleging ineffective assistance of counsel is well established in 28 U.S.C. § 2255 jurisprudence. To prevail, a petitioner must first

show that counsel's representation was deficient, and second, that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficiency-performance prong of *Strickland*, a defendant must overcome the "strong presumption" that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). As to prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697. To prevail, petitioner must demonstrate a "reasonable probability of a different outcome." *Lenz v. Washington*, 444 F.3d 295, 303 (4th Cir. 2006) (internal quotation marks and citations omitted).

Rosga challenges the wisdom and judgment of his trial counsel in not moving to dismiss the indictment on the basis of outrageous governmental conduct. Although Rosga finds fault with many aspects of the investigation, this claim is based on two acts by undercover ATF special agents. First, Rosga highlights the fact that agents leased the premises for an Outlaws' clubhouse in Petersburg, Virginia. (Pet'r's Mem. Supp. Mot. § 2255 at 13.) Secondly, he is critical of the agents' participation in a confrontation with a rival motorcycle club at the Cockade's Bar in Petersburg, Virginia on March 20, 2009.

6

(*Id.* at 14–15.) The agents' conduct, Rosga argues, was sufficiently outrageous and constitutionally offensive to warrant a new trial. (*Id.*)

In its rejoinder, the government explains that evidence at trial revealed the Outlaws' organization required the agents to agree to develop a clubhouse in Petersburg as a prerequisite to club membership. (Gov't's Resp. at 10, ECF No. 1074.) Simply stated, the idea to establish a clubhouse in Petersburg originated with Outlaws' members. (Trial Tr. at 106–07, 142, ECF No. 937.) Furthermore, as the government notes, the regional vice president of the Outlaws directed an ATF special agent to locate and report rival motorcycle clubs in Petersburg. (Gov't's Resp. at 10; Trial Tr. at 190–94.) This directive led to the confrontation at the Cockade's Bar on March 14, 2009.

Cases in which the Due Process Clause has been successfully invoked to dismiss indictments on the basis of outrageous governmental conduct are sparse and easily distinguishable from the facts presented here. The genesis of its underlying theory can be traced to dicta in *United States v. Russell*, 411 U.S. 423 (1973). After rejecting the defendant's entrapment defense, the Supreme Court in *Russell* observed that "[w]hile we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, . . . the instant case is distinctly not of that breed." *Id.* at 431–32. The vitality of the outrageous conduct defense was further circumscribed in *Hampton v. United States*, 425 U.S. 484 (1976). In *Hampton*, the court clarified that the defense "is not intended to give the federal judiciary a

chancellor's foot veto over law enforcement practices of which it did not approve." *Id.* at 490 (internal quotation marks omitted).

As the Fourth Circuit concluded in *United States v. Hasan*, "[a]fter *Hampton*, the 'outrageous conduct' doctrine survives in theory, but is highly circumscribed." 718 F.3d 338, 343 (4th Cir. 2013). Additionally, the court in *Hasan* observed that "this court has never held in a specific case that the government has violated the defendant's due process rights through outrageous conduct." *Id.* While the door remains ajar that a case may arise in which the government's participation in the crime may be so outrageous as to warrant dismissal on due process grounds, "[t]he law enforcement conduct here stops far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *Russell*, 411 U.S. at 432 (quoting *Kinsella v. United States*, 361 U.S. 234, 246 (1960)). Therefore, even if trial counsel did move for a dismissal on this ground, it is highly improbable that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 697. Accordingly, Rosga's fourth claim will be dismissed.

Finally, Rosga contends that his "Fifth and Sixth Amendment Rights to a Fair Trial, Due Process, to Confront the Witnesses Against Him and Effective Assistance of Counsel, Were Violated by Defense Counsel Not Moving for Reconsideration of Defendant's Motion in Limine" thus denying the admissibility of certain impeachment related materials. (Pet'r's Mem. Supp. Mot. § 2255 at 18.) Specifically, Rosga's trial counsel sought leave to question one of the ATF special agents about a traffic citation the special agent received and failed to report to his superiors, in violation of agency

regulations and policies. In addition, Rosga's counsel sought to explore another undercover agent's driving while intoxicated conviction occurring more than 15 years prior to his participation in the Outlaws' investigation. The Court denied both motions and the Fourth Circuit affirmed that decision on direct review. To elude the bar against repetitive challenges, Rosga has refashioned his claim to focus on trial counsel's failure to move for reconsideration of this ruling during the course of the trial.[4]

When the issue was initially raised pre-trial, the Court examined all related documents provided by the government, *in camera*, to determine whether they were exculpatory or affected the credibility of the witnesses. This Court ruled that with the exception of Special Agent Ozbolt's failure to reveal the reckless driving charge to his supervisors, none of the other information contained in the documents was exculpatory, relevant, or admissible in this case, and the Fourth Circuit agreed. (Mem. Op., ECF No. 693.) Absent a change of circumstances, there is no reason to believe the Court would have ruled differently if trial counsel repeatedly renewed this motion. Claim Five will therefore be denied.

To prevail under § 2255, Rosga must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Rosga has failed to meet that

---

[4] As the government stresses in its response to the petition, Rosga's trial counsel renewed her motion to cross examine at least one of the ATF special agents on his alleged misconduct at a sidebar conference during trial. (Gov't's Resp. at 13.) This motion was denied. (Trial Tr. at 1804–05, ECF No. 943.)

burden. Viewing the record as a whole, Rosga fails to demonstrate that his trial counsel's representation fell below an objective standard of reasonableness. Decisions pertaining to "trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed" reside with trial counsel. *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (internal quotation marks and citations omitted); *see also United States v. Chapman*, 593 F.3d 365, 368 (4th Cir. 2010). Rosga's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 will therefore be denied.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Rosga has not satisfied this standard. Accordingly, a certificate of appealability will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Dec 12, 2014
Richmond, VA

10